UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
DUNKIN' DONUTS FRANCHISING LLC,             )
  a Delaware  Limited Liability Company,    )
DUNKIN' DONUTS FRANCHISED                   )
  RESTAURANTS LLC,                          )
  a Delaware  Limited Liability Company, and )
DD IP HOLDER LLC,                           )
  a Delaware  Limited Liability Company,    )
                                            )    Civil Action No.
              Plaintiffs,               )
                                            )
    v.                                        )
                                            )
SYMPHONY DONUTS, INC.,                      )
  a Massachusetts Corporation,              )
BERKLEY ENTERPRISES, INC.,                  )
  a Massachusetts Corporation,              )
PANAGIOTIS VORVIS,                          )
  a Massachusetts resident, and             )
OLGA PITHIS,                                )
  a Massachusetts resident,                 )
                                            )
              Defendants.               )
_____)

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

      This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising out of the fact that the Defendants, owners and operators of three Dunkin' Donuts franchises in Boston, Massachusetts, are operating, maintaining, and engaging in a competing restaurant under a different trade name.  Defendants have breached their Franchise Agreements with Plaintiffs by violating the in-term covenant not to compete provision contained in the Agreements, which prohibits Defendants from having any direct or indirect interest in any business that sells products that are the same as or similar to those sold at their Dunkin' Donuts shops.  Defendants' continued use and enjoyment of the Dunkin' Donuts trademarks, trade

names, and trade dress outside the scope of the Franchise Agreements, as "holdover franchisees," is a violation of the Lanham Act, 15 U.S.C. §§ 1114 *et. seq*. Plaintiffs seek injunctive and other relief against Defendants for the reasons set forth below.

## PARTIES

1.  Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to operate "Dunkin' Donuts" shops throughout the United States. All Dunkin' Donuts Franchise Agreements dated on or after May 26, 2006 are in the name of Dunkin' Donuts Franchising LLC. Dunkin' Donuts franchisees are licensed to use trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.  Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006 have been assigned to Dunkin' Donuts Franchised Restaurants LLC. It is engaged in the business of franchising independent businesspersons to operate "Dunkin' Donuts" shops throughout the United States. Dunkin' Donuts franchisees are licensed to use trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of

donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

3. Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts Franchised Restaurants LLC and Dunkin' Donuts Franchising LLC each has a license to use and license others to use these marks and trade name and along with their predecessors have used them continuously since approximately 1960 to identify their doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC, and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin' Donuts" or "Dunkin'."

4. Defendant Symphony Donuts, Inc. is a Massachusetts corporation and, upon information and belief, its principal place of business is located in Boston, Massachusetts. Defendant Symphony Donuts, Inc. was the owner of Dunkin' Donuts shops located at 283 Huntington Avenue, Boston, Massachusetts 02115 (the "283 Huntington Shop"), pursuant to a Franchise Agreement dated November 20, 2001 (the "283 Huntington Franchise Agreement"), and 53 Huntington Avenue, Boston, Massachusetts 02199 (the "53 Huntington Shop"), pursuant to a Franchise Agreement dated December 24, 2007 (the "53 Huntington Franchise Agreement"). Defendant Symphony Donuts, Inc. was formerly licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of the Franchise Agreements.

5. Defendant Berkley Enterprises, Inc. is a Massachusetts corporation and, upon information and belief, its principal place of business is located in Boston, Massachusetts. Defendant Berkley Enterprises, Inc. was the owner of a Dunkin' Donuts shop located at 153 Massachusetts Avenue, Boston, Massachusetts 02115 (the "153 Massachusetts Shop"), pursuant to a Franchise Agreement dated May 28, 2002 (the "153 Massachusetts Franchise Agreement"). Defendant Berkley Enterprises, Inc. was formerly licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of the Franchise Agreement.

6. Defendant Panagiotis Vorvis ("Vorvis") is a natural person and, upon information and belief, a citizen and resident of the Commonwealth of Massachusetts. Defendant Vorvis is an officer, member, and/or shareholder of Symphony Donuts, Inc. and Berkley Enterprises, Inc., and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees. Defendant Vorvis signed the Franchise Agreements on behalf of Symphony Donuts, Inc. and Berkley Enterprises, Inc.

7. Defendant Olga Pithis ("Pithis") is a natural person and, upon information and belief, a citizen and resident of the Commonwealth of Massachusetts. Defendant Pithis is an officer, member, and/or shareholder of Symphony Donuts, Inc. and Berkley Enterprises, Inc., and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees. Symphony Donuts, Inc., Berkley Enterprises, Inc., Vorvis, and Pithis will hereinafter be referred to as "Defendants."

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1338, & 1367(a).

9. This Court has *in personam* jurisdiction over Defendants because they either conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The Dunkin' Donuts System

11. Dunkin' Donuts is franchisor of the Dunkin' Donuts franchise system.

12. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' has a license to use and license others to use these marks and trade name and along with its predecessors has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

13. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

14. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

15. The Dunkin' Donuts marks have been widely advertised and promoted by Dunkin' Donuts over the years. Between 1971 and 2007, Dunkin' Donuts and its franchisees spent more than $1,925,000,000 on advertising and promoting the Dunkin' Donuts marks.

Dunkin' Donuts spent approximately $190,000,000 in fiscal year 2007 alone on advertising and promotion.

16. Dunkin' Donuts and its franchisees currently operate approximately 6,300 shops in the United States and 2,400 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

17. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

**Defendants' Obligations Under the Franchise Agreements**

18. Defendants were formerly licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of their respective Franchise Agreements.

19. The terms of the Franchise Agreements are identical or virtually identical. The language of the Franchise Agreements cited to or quoted herein is representative of the language contained in each Franchise Agreement.

20. Under the Franchise Agreements, Defendants agreed to use Dunkin' Donuts' proprietary marks, including, but not limited to, their trademarks, logos, emblems, trade dress

and other indicia of origin, "only in the manner and to the extent specifically licensed" by the agreement. (Franchise Agreement §§ 7.0 and 7.1.)

21.  Defendants agreed that any unauthorized use of the Dunkin' proprietary marks during or after the expiration or termination of the agreement would constitute an incurable default causing irreparable harm subject to injunctive relief. (Franchise Agreement §§ 7.1, 9.4.2 and 9.4.3.)

22.  Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system. (Franchise Agreement § 8.0.1.)

23.  Under the terms of the Franchise Agreement, Defendants agreed that they would refrain from doing certain things during the term of the Agreement, including:

> 8.0.    During the term of this Agreement, including any extension or renewal thereof . . . neither FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall:
>
> 8.0.1.  Divert or attempt to divert any business or customer of the Unit to any competitor, by direct inducement or otherwise, or to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s);
>
> 8.0.3.  [O]wn, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell the same or substantially similar products to the type FRANCHISOR requires to be offered by FRANCHISEE at the Unit;
>
> 8.1.    During the term of this Agreement . . . and for a period of two (2) years after expiration or termination of this Agreement, regardless of the cause of termination, neither FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall communicate or divulge to, or use for the benefit of any person, persons, partnership, association or corporation, any information or knowledge concerning the methods of constructing, equipping or operating units under any of FRANCHISOR's Systems and all other information or knowledge which FRANCHISOR deems confidential and which may be

communicated to FRANCHISEE, or of which FRANCHISEE may be apprised by virtue of FRANCHISEE's operation under the terms of this Agreement.

24. Under the terms of the Franchise Agreement, Defendants agreed that a violation of the covenants cited in the above paragraph would result in irreparable injury to Plaintiffs for which no adequate remedy at law is available and consented to the issuance of an injunction prohibiting the violation of those restrictions. (Franchise Agreement § 8.4 or 9.6.)

25. The 53 Huntington and 283 Huntington Franchise Agreements each contain a "cross-default" provision, which states in Paragraph 9.0.4 that "Franchisee shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . ." (Franchise Agreement § 9.0.4.)

26. Thus, the termination of one Franchise Agreement constitutes grounds for the termination of all of the other Franchise Agreements, and each of them individually.

27. Pursuant to certain Cross-Guarantees contained in Paragraph 5.6 of the Franchise Agreements, or in separately executed documents, each corporate franchisee, and each partner or shareholder thereof, is jointly and severally liable for the defaults of the others under their respective Franchise Agreements, where one or more of the partners, members, or shareholders holds an interest in another Dunkin' Donuts franchise. Consequently, all of the individual and corporate Defendants are each jointly and severally liable for each other's defaults at all of the Shops.

28. Under Paragraph 9.1.3 or 9.1.4 of the Franchise Agreements, no cure period is available if Defendants are in default under paragraph 9.0.4 or if they otherwise commit an act of

fraud with respect to their rights or obligations under the Agreement. Moreover, as a matter of law, no cure period is available for such defaults.

29.     Defendants agreed that, upon the termination of the Franchise Agreements, their rights to use Plaintiffs' proprietary marks and systems would cease, and that they would promptly pay Plaintiffs any damages, costs, and expenses, including reasonable attorneys' fees, incurred by Plaintiffs as a result of the Defendants' default(s). (Franchise Agreement §§ 9.3, 9.4, 9.4.1 and 9.4.2.)

30.     Defendants further agreed that any unauthorized use of Dunkin' Donuts' proprietary marks following the effective date of the termination of the Franchise Agreements would result in irreparable harm to Dunkin' Donuts and would constitute willful trademark infringement. (Franchise Agreement § 9.4.3 or 9.4.2.)

## DEFENDANTS' DEFAULTS

31.     Defendants breached the Franchise Agreements by, during the term of the Franchise Agreements, developing, owning, maintaining, engaging in, having an interest in, and/or operating a competing business.

32.     Specifically, Dunkin' Donuts' investigation of Defendants has revealed that Defendant Panagiotis Vorvis was involved in developing, owning, maintaining, engaging in, having an interest in, and/or operating a competing restaurant under the name "The Café 57 and Grille." The Café 57 and Grille offers for sale bagels, croissants, cookies, muffins, egg sandwiches and other sandwiches, other baked goods and breakfast items, and a coffee line – including specialty coffees such as lattes and cappuccinos, as well as an iced peppermint latte – at a location in Brighton, Massachusetts. On December 3, 2009, a representative of Dunkin'

Donuts observed Defendant Panagiotis Vorvis working behind the counter of The Café 57 and Grille restaurant serving customers.

33. Upon information and belief, The Café 57 and Grille is purportedly owned and operated by Eleftheria Vorvis, the wife of Defendant Panagiotis Vorvis, through a business known as West Side Foods, Inc.

34. When Dunkin' Donuts confronted Defendant Panagiotis Vorvis, he admitted that he had been helping Eleftheria Vorvis at The Café 57 and Grille.

35. Upon information and belief, Defendant Panagiotis Vorvis is communicating or divulging to, or using for the benefit of, the business known as West Side Foods, Inc. information or knowledge concerning the methods of constructing, equipping, or operating a Dunkin' Donuts shop and other information or knowledge which Dunkin' Donuts deems confidential and of which Defendants were apprised by virtue of their operation of their Dunkin' Donuts shops under the terms of Dunkin' Donuts' Franchise Agreements.

36. Defendants' violations of their covenants not to compete constitute breaches of the Franchise Agreements and acts of fraud with respect to their rights or obligations under the Franchise Agreements, warranting termination of those agreements.

37. Pursuant to the applicable provisions of the Franchise Agreements, on January 22, 2010, Plaintiffs served Defendants with a Notice of Default and Termination, terminating the Franchise Agreements, and demanding that they cease using Plaintiffs' trade names and proprietary marks immediately upon the effective date of termination. The Notice demanded that Defendants comply with their post-termination obligations as set forth in the Agreements.

38. To date, Defendants have refused to accept termination and continue to operate their shops as if they were licensed franchisees.

## COUNT I
### (Breach of Contract – Franchise Agreements)

39. The allegations of paragraphs 1 through 38 are hereby incorporated by reference.

40. The conduct described herein constitutes breaches of the above-described terms of the Franchise Agreements.

41. These breaches constitute grounds for terminating the Franchise Agreements.

42. As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Trademark Infringement)

43. The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

44. The use in commerce of the Dunkin' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin'. Such unauthorized use of Dunkin's trademarks and trade names infringes Dunkin's exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

45. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

46.     As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT III
### (Federal Unfair Competition)

47.     The allegations of paragraphs 1 through 46 are hereby incorporated by reference.

48.     The use in commerce of Dunkin's trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person.  Such unauthorized use of Dunkin's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

49.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

50.     As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT IV
### (Trade Dress Infringement)

51.     The allegations of paragraphs 1 through 50 are hereby incorporated by reference.

52.     Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same lettering

style and in the same distinctive color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

53.     The use by Defendants of trade dress that is identical to the Dunkin' Donuts trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts shops operated by Dunkin' Donuts licensees.  Such adoption of Dunkin' Donuts' trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

54.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

55.     As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

**Prayer for Damages, Injunctive, and Other Relief**

WHEREFORE, Plaintiffs pray that this Court:

a.     Enter a declaratory judgment that the conduct of Defendants violates the terms of the Franchise Agreements, and constitutes grounds for terminating the Franchise Agreements;

b.     Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements by Defendants;

c.     Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

  d.  Enjoin all Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

  e.  Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements and any Lease Riders or Lease Option Agreements, and taking all steps required to transfer their leasehold interests in the shops to Plaintiffs or their designee, in the event that Plaintiffs elect to exercise any rights they or any of their affiliates or subsidiaries might have in such interests;

  f.  Award Dunkin' judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  g.  Award Dunkin' prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  h.  Award Plaintiffs all damages to which they are entitled to, including such exemplary or punitive damages, and which are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

  i.  Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

  j.  Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Donna M. Brewer
Robert A. Murphy (BBO# 363700)
Donna M. Brewer (BBO# 545254)
CASNER & EDWARDS, LLP
303 Congress Street, 2nd Floor
Boston, Massachusetts 02210
Telephone:    (617) 426-5900
Facsimile:    (617) 426-8810
rmurphy@casneredwards.com
brewer@casneredwards.com

Robert L. Zisk
Eric L. Yaffe (BBO# 548185)
Jimmy Chatsuthiphan
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250

*Attorneys for Plaintiffs*

Dated:  January 22, 2010

Dunkin' Donuts Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC

3648.132/478035.1